Joseph M. Alioto (SBN 42680)
Joseph M. Alioto, Jr. (SBN 215544)
ALIOTO LAW FIRM
555 California Street, Suite 3160
San Francisco, California 94104
Telephone: (415) 434-8900
Facsimile: (415) 434-9200
Email: JAliotoJr@AliotoLaw.com



[Additional attorneys last page]

E-filing

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

CV 1 0      4 2 8 9



CASSAN ENTERPRISES, INC.;
CMC INVESTMENTS, INC.; and
TODD INVESTMENTS CO.;

Civil No.

   *Plaintiffs,*

 *v.*

HERTZ GLOBAL HOLDINGS, INC.
and DOLLAR THRIFTY
AUTOMOTIVE GROUP, INC.;

   *Defendants.*

## COMPLAINT FOR VIOLATION OF
## SECTION 7 OF THE CLAYTON ACT

Under authority of Section 16 of the Clayton Antitrust Act, 15 U.S.C. §

26, the above-named plaintiffs, by and through their attorneys, bring this

suit to enjoin the acquisition of Dollar Thrifty Automotive Group, Inc.

("DTG") by Hertz Global Holdings, Inc. ("Hertz") as violative of Section 7 of

1

the Clayton Act, 15 U.S.C. § 18. Accordingly, plaintiffs complain and allege as follows:

## THE NATURE OF THE ACTION

1. On or around April 25, 2010, Hertz and DTG entered into a merger agreement providing for Hertz to acquire 100 percent of the voting securities of DTG for $41 per share. On or around September 12, 2010, Hertz and DTG amended their merger agreement to increase the acquisition price to $50 per share in a transaction valued at approximately $1.45 billion.

2. The car rental industry is divided primarily into two categories, depending on the location from which customers rent cars, namely, airport and off-airport rentals. Within the United States, airport car rentals account for approximately 75% of all car rentals.

3. There are only four principal car rental firms in the United States. Hertz owns and operates the number one brand in the United States, which accounts for 26% of the airport market. DTG is the fourth largest car rental company in the United States. Its Dollar (7%) and Thrifty (5%) brands account for a combined 12% market share. The remaining two firms are Avis Budget Group, Inc. ("ABG"), which operates the Avis (19% share) and Budget (10% share) brands with a combined total of 29% of the market, and Enterprise Holdings, which operates the National/Alamo (21% share) and Enterprise (10% share) brands with a total market share of 31%. All other car rental firms account for a total of only 2% of the market.

4. The proposed acquisition of DTG by Hertz would create the largest airport car rental firm in the United States.

2

5. The proposed acquisition would also significantly increase the levels of concentration in the United States airport car rental market and substantially reduce competition by combining the Hertz, Dollar, and Thrifty brands. By virtue of the combination, Hertz's market share of the relevant market will increase from 26% to 38%, increasing the industry's Herfindahl-Hirschman Index ("HHI") by over 600 points – from roughly 2,600 to 3,200 – resulting in an extraordinarily concentrated market and a dramatic increase in Hertz's market power.

6. The significant increase in market concentration that will result from the proposed acquisition is likely to substantially lessen competition, in violation of Section 7 of the Clayton Act, and result in higher prices, lower service levels, and diminished product quality of airport car rental services for consumers, including plaintiffs. Moreover, as franchisees of DTG doing business as Dollar Rent-A-Car, plaintiffs are further threatened with loss and damage in the form of increased fees, diverted reservations, diminished availability of vehicles, the potential reduction in the value of their businesses as going concerns, termination of their franchise contracts, and loss of their businesses as independent franchises.

## JURISDICTION

7. This action is brought under Section 16 of the Clayton Act, 15 U.S.C. § 26 to enjoin defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18. This Court has jurisdiction pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and 28 U.S.C. §§ 1331 (federal question) and 1337 (commerce and antitrust regulation).

3

8. Defendants Hertz and DTG rent cars in the flow of interstate commerce, and the rental of such cars substantially affects interstate commerce. Defendants Hertz and DTG transact business and are found in this district since both defendants rent cars to customers at airports located within Northern California.

## THE PARTIES

9. Defendant Hertz Global Holdings, Inc. is a Delaware corporation with executive headquarters in New Jersey. The Hertz Corporation is its primary operating company and is a wholly-owned subsidiary of Hertz Investors, Inc., which is wholly-owned by Hertz Global Holdings, Inc. Unless otherwise indicated, the combined Hertz entities are referred to herein as "Hertz." The primary operation of The Hertz Corporation is the rental of cars under the Hertz brand name. Hertz is the number one airport car rental brand in the United States with more than 26% of the market and annual revenues of $7.1 billion. It employs over 23,000 people and operates more than 4,400 rental locations worldwide, with operations in every major U.S. airport, including the approximately 190 largest U.S. airports.

10. Dollar Thrifty Automotive Group, Inc. ("DTG") is a Delaware corporation with headquarters in Tulsa, Oklahoma. DTG owns Dollar Rent A Car, Inc. ("Dollar") and Thrifty, Inc., which owns Thrifty Rent-A-Car System, Inc. ("Thrifty"). With its Dollar and Thrifty brands, DTG is the fourth largest operator of airport car rental facilities in the United States with 12 % of the market and annual revenues of $1.5 billion. DTG employs 6,000 people and operates over 1,550 rental locations in 53 countries worldwide, including approximately 600 locations in the United States and Canada and virtually all of the top United States airport markets.

4

11. Plaintiff Cassan Enterprises, Inc. ("Cassan") is a Washington corporation. Cassan owns Dollar Rent A Car franchises which it leases, or sub-franchises, to CMC Investments, Inc. and Todd Investments Co. Cassan owns a fleet of rental vehicles which it leases to CMC Investments, Inc. and Todd Investments Co. for the purpose of conducting car rental business. Additionally, Cassan is a regular consumer of airport car rentals. Cassan regularly rents cars from Dollar Rent A Car at airport locations to which its employees travel. Moreover, Cassan maintains a corporate account with National car rentals, from which it regularly rents vehicles at airports to which its employees travel. Cassan expects to continue renting cars at airport locations throughout the United States.

12. Plaintiff CMC Investments, Inc. ("CMC") is a Washington corporation doing business under the name Dollar Rent A Car at, among other places, the Seattle/Tacoma Airport in Seattle, Washington. CMC is a sub-franchisee and wholly-owned subsidiary of Cassan.

13. Plaintiff Todd Investments Co. ("Todd") is an Oregon corporation doing business under the name Dollar Rent a Car at the Portland International Airport in Portland, Oregon. Todd is a sub-franchisee of Cassan.

## THE RELEVANT MARKET

14. The relevant market is the United States airport car rental industry.

15. The U.S. car rental industry can be divided into two principal markets: the airport market and the "off-airport" or "local" market.

5

16.     The airport market consists generally of the rental of cars to business or leisure travelers arriving to the airport by airplane. Car rental companies competing in the airport market have facilities located on or adjacent to the airport. 75% of all car rentals in the United States are airport car rentals.

17.     The off-airport or local car rental market consists of the rental of cars to customers who periodically need a vehicle closer to home for personal or business use. Customers within this market include those needing a temporary replacement vehicle when their own cars have been damaged. Car rental companies competing in the off-airport or local market have facilities located away from the airport, typically in a city downtown area. 25% of car rentals in the United States are off-airport or local car rentals.

18.     Travelers who have arrived at an airport and are in need of a rental car cannot reasonably turn to off-airport car rentals as a substitute for airport rentals, because off-airport facilities are generally located too far from the airport. Generally speaking, lowering prices at off-airport car rental facilities could not constrain increasing prices at airport car rental facilities.

19.     There are no other reasonably available substitutes for airport car rentals. Travelers who rent cars at the airport generally do so for the convenience or necessity of ground travel flexibility. Other forms of ground transportation, including buses, taxis, or limousines, are too inflexible or too expensive to reasonably substitute an airport car rental.

20.     Car rental companies with facilities located at the airport would be able to increase the price of airport car rentals by a small but significant and non-transitory amount without losing sufficient sales to make such a price increase unprofitable.

21.     The public and the car rental industry recognize "airport car
rentals" as a separate economic market. Both defendants in this case have
made public statements recognizing the existence of an "airport market."
Companies that rent cars at the airport often require unique facilities, from a
rental desk leased from the airport to a specialized parking structure with
security barriers and personnel booths. Customers who rent cars often do so
only when traveling and only from airport facilities.

22.     The relevant market consists of seven brands owned by four
companies with the following market shares:

- Hertz (operating Hertz brand) – 25.7%
- Avis Budget Group (operating Avis and Budget brands) – 28.9%
- Enterprise Holdings (operating National/Alamo and Enterprise brands) – 31.4%
- DTG (operating Dollar and Thrifty brands) – 12%

23.     The market shares in the relevant market indicate that the
market is already highly concentrated. Utilizing the Herfindahl-Hirschman
Index ("HHI"), a standard concentration measure used by the Department of
Justice and the Federal Trade Commission, the relevant market is highly
concentrated with an HHI of approximately 2,630. (See Exhibit A, explaining
and calculating HHI in this case.)

24.     The prices offered by airport car rental firms such as Budget,
Dollar, Alamo, Thrifty and Enterprise are not sufficiently differentiated with
prices offered by Hertz, Avis, or National to allow those latter firms to
implement a small but significant non-transitory increase in price that would
be profitable. The range of average weekend prices offered by all seven firms
in the market is less than $10.

7

25. Hertz has the ability, financial capability, managerial expertise and technological prowess to offer airport car rentals at prices equivalent to those offered by other airport car rental brands, including the Avis, National, Budget, Dollar, Alamo, Thrifty and Enterprise brands. Hertz has provided car rental service in the United States for over 90 years. It annually sells hundreds of vehicles that could be used to offer lower-priced airport car rental services. Furthermore, Hertz is viewed by other firms in the car rental industry as capable, ready and willing to offer prices and services comparable to every airport car rental brand, since every firm knows that Hertz is the top revenue-generating brand in the airport car rental market.

26. On information and belief, Hertz and DTG have conducted internal studies analyzing the financial and economic benefit of offering airport car rental services at prices comparable to those offered by every other airport car rental brand.

27. DTG has the ability, financial capability, managerial expertise and technological prowess to offer airport car rentals at prices equivalent to those offered by other airport car rental brands, including the Hertz, Avis, National, Budget, Alamo, and Enterprise brands. Through its Dollar and Thrifty brands, DTG has provided car rental service in the United States for over 45 years. It has the financial capability to purchase vehicles that could be used to offer higher-priced airport car rental services. Furthermore, DTG is viewed by other firms in the car rental industry as capable, ready and willing to offer prices and services comparable to those offered by every other airport car rental brand.

28. Both Avis Budget Group and Enterprise Holdings perceive Hertz as a potential competitor in every segment of the airport car rental

8

industry, since it has already entered other segments with brands such as Advantage.

29.     Both Avis Budget Group and Enterprise Holdings perceive DTG as a potential competitor in every segment of the airport car rental industry.

30.     The airport car rental market maintains high barriers of entry for *de novo* entrants, which would need to expend a prohibitive amount of capital to compete in the relevant market. Current market participants, on the other hand, can relatively easily move into other segments of the relevant market or into other airport locations.

31.     The prices offered by the various brands in the airport car rental market reflect their firms' account of all other prices in the market, as well as the possibility that other firms may establish new brands to offer lower or higher prices within the relevant market.

## LIKELY ANTICOMPETITIVE EFFECTS

32.     If the proposed acquisition were permitted to occur, the United States airport car rental market would become substantially more concentrated. The merged firm of Hertz/DTG would control 38% of the market. The top two firms in the industry would control 70% of the market. The top three firms in the industry would control 98% of the market. The proposed acquisition would produce an HHI increase of 620 and a post-acquisition HHI of approximately 3,250. (See Exhibits B and C, graphically representing market concentration changes.)

33.     The significant increase in market concentration, combined with the elimination of competition between the Hertz, Dollar, and Thrifty brands, is likely to substantially lessen competition in violation of Section 7 of the

9

Clayton Antitrust Act, resulting in higher prices, lower service levels, lower product quality, and fewer rental options for consumers, as well as higher fees and other harms to franchisees of the combined entity.

34.    Moreover, the car rental industry in the United States has become substantially more concentrated in the past 15 years. If the proposed acquisition is consummated, the industry will have gone from sixteen car rental competitors to three in less than two decades. (See Exhibit D, outlining history of industry consolidation.)

35.    DTG and Hertz are substantial rivals in that they are two of four companies in the relevant market, and they control brands that compete for business directly against one another.

### ABSENCE OF COUNTERVAILING FACTORS

36.    Responses from Enterprise or ABG – the only remaining competitors in the market – will not prevent the likely anticompetitive effects from occurring. Competition from new entrants will not likely reduce the anticompetitive effects alleged. Barriers to entry in the relevant market, including, e.g., the costs associated with purchasing and servicing a fleet of vehicles at each of the major airports, will likely prevent de novo entry (but would not prevent entry into new markets by existing competitors) and be insufficient to prevent a small but significant and non-transitory price increase from being profitable.

37.    The anticompetitive effects alleged here will not be lessened by any efficiencies to be achieved by the acquisition.

38.    Hertz's divestiture of the Advantage brand will not address the anticompetitive effects created by the proposed acquisition.

10

## VIOLATION ALLEGED

39.     Plaintiffs hereby incorporate by reference paragraphs 1 through 38.

40.     The proposed acquisition of DTG by Hertz would likely substantially lessen competition in interstate commerce in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18 in that it would, *inter alia*, eliminate actual and potential competition between DTG and Hertz, and competition in the United States airport car rental market would be substantially lessened.

11

## PRAYER FOR RELIEF

Plaintiffs pray for the following relief:

A.    That the proposed acquisition alleged herein be adjudged to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

B.    That defendants be preliminarily and permanently enjoined and restrained from completing the proposed acquisition or from entering into any agreement the effect of which would be Hertz's acquisition of DTG or any of its subsidiaries;

C.    That plaintiffs be awarded costs of suit, including a reasonable attorneys' fee, as provided by 15 U.S.C. § 26; and

D.    That plaintiffs have such other and further relief as the Court may deem just and proper, including but not limited to an order of divestiture, if necessary.


September 22, 2010                    Respectfully submitted,


                                     Joseph M. Alioto Jr.

                                     Joseph M. Alioto
                                     Joseph M. Alioto, Jr.
                                     Theresa D. Moore
                                     Thomas P. Pier
                                     **ALIOTO LAW FIRM**
                                     555 California Street
                                     Thirty-First Floor
                                     San Francisco, California 94104
                                     Telephone: (415) 434-8900
                                     Facsimile: (415) 434-9200
                                     JAliotoJr@AliotoLaw.com

Theodore F. Schwartz
Kenneth R. Schwartz
**LAW OFFICES OF THEODORE F.
SCHWARTZ**
230 South Bemiston, Suite 770
Clayton, Missouri 63105
Telephone: (314) 863-4654
Facsimile: (314) 862-4357
Theodore@Schwartz-Schwartz.com

*Attorneys for Plaintiffs*

# EXHIBIT A

## EXPLANATION OF HERFINDAHL-HIRSCHMAN INDEX ("HHI")

The Herfindahl-Hirschman Index ("HHI") is a standard method of calculating market concentration utilized by practitioners, courts, and the government regulatory bodies that oversee competition in the United States. According to the United States Department of Justice and Federal Trade Commission:

> The HHI is calculated by summing the squares of the individual firms' market shares, and thus gives proportionately greater weight to the larger market shares. When using the HHI, the Agencies consider both the post-merger level of the HHI and the increase in the HHI resulting from the merger.

*Horizontal Merger Guidelines*, ¶ 5.3 (rev. Aug. 19, 2010) at 18-19. According to the *Merger Guidelines*, markets with HHI values above 2500 are considered "highly concentrated." *Id.* at 19. Moreover, mergers resulting in highly concentrated markets that involve an increase in the HHI of between 100 and 200 points "potentially raise significant competitive concerns and often warrant scrutiny." *Id.* However, mergers resulting in highly concentrated markets that involve an increase in the HHI of more than 200 points "will be presumed to be likely to enhance market power." *Id.* In this case, HHI is calculated as follows:

| Pre-Merger Market | | | Post-Merger Market | | | |
|---|---|---|---|---|---|---|
| Firm | Share | HHI | Firm | Share | HHI | HHI Increase |
| Hertz | 25.7% | 2625 | Hertz/DTG | 37.7% | 3242 | 617 |
| ABG | 28.9% | | ABG | 28.9% | | |
| Enter. | 31.4% | | Enter. | 31.4% | | |
| DTG | 12% | | | | | |

# EXHIBIT B

# U.S. Airport Market Share - Major Car Rental Companies
## Pre-Merger (Ungrouped and Grouped) vs. Post-Merger*



* Source: 2009 Hertz Annual Report

# EXHIBIT C

# HHI Comparison: Pre-Merger (Ungrouped and Grouped) vs. Post-Merger
U.S. Airport Market Share, 2009



# EXHIBIT D

# Origins of U.S. Car Rental Companies
## History of Mergers and Acquisitions

